PAUL TIMMONS *vs.* MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY.

Middlesex. March 5, 1992. - May 14, 1992.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ

*Evidence*, Expert opinion. Earning capacity, Medical record. *Witness*, Expert, Vocational rehabilitation counselor. *Practice, Civil*, New trial.

At the trial of a claim for personal injuries resulting from the plaintiff's automobile being struck from the rear by a bus owned by the defendant, there was prejudicial error in the judge's allowing the plaintiff's expert witness, a vocational rehabilitation counselor, to testify on the impairment of the plaintiff's future earning capacity, where the expert was not qualified to testify on the issue of the permanency of the plaintiff's injuries, and where the expert's assumption that the plaintiff's injuries were permanent was unsupported by any evidence in the record. [647-653]

CIVIL ACTION commenced in the Superior Court Department on February 1, 1989.

The case was tried before *James P. Lynch, Jr.*, J., and a motion for a new trial was heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*James E. Small, Jr.*, for the defendant.

*Lawrence W. Frisoli* for the plaintiff.

NOLAN, J. The plaintiff, a Somerville police officer, was the operator of an automobile which was struck from the rear by a bus owned by the Massachusetts Bay Transportation Authority (Authority) and operated by James F. Lawlor. The plaintiff suffered injuries as a result of this accident, and he initiated a lawsuit in the Superior Court Department, alleging that both the Authority and Lawlor were

negligent in connection with the accident.[1] The case was tried before a jury as to damages only, after the Authority judicially admitted liability. The jury returned a verdict awarding the plaintiff $25,000 for pain and suffering, $12,800 for medical and hospital bills, and $190,000 for impairment of earning capacity.

After the verdict, the trial judge denied the Authority's motion for a new trial or, in the alternative, remittitur. The Authority appealed from the judgment and from the denial of its motion for a new trial. On appeal, the Authority asserts, inter alia, that the judge erred in allowing the plaintiff's expert witness, a vocational rehabilitation counselor, to testify about the impairment of the plaintiff's future earning capacity. The Authority argued that there was an inadequate basis for the expert's testimony on this subject. In an unpublished order and memorandum, the Appeals Court affirmed the judgment and the denial of the motion for a new trial. 31 Mass. App. Ct. 1109 (1991). We allowed the Authority's application for further appellate review. We agree with the Authority that it was prejudicial error to allow the expert to testify on the impairment of the plaintiff's future earning capacity. We reverse and remand for a new trial solely on the issue of the impairment of the plaintiff's earning capacity.[2]

The major thrust of the plaintiff's case was that the injuries that he suffered as a result of the accident, although they did not permanently affect his ability to function as a police officer, permanently prevented him from working paid police details and teaching self-defense at the police academy, both of which activities supplemented his police officer's income.

---

[1] The plaintiff dismissed his claim against Lawlor at the close of all the evidence in the trial.

[2] There is no dispute on appeal concerning the jury's award of damages for pain and suffering, and medical and hospital bills. While there was evidence concerning the impairment of the plaintiff's earning capacity between the time of the accident and the time of the trial, we find it difficult to separate the jury's award into impairment of past earning capacity and impairment of future earning capacity. In these circumstances, we believe that the best course would be a new trial on the total impairment of the plaintiff's earning capacity.

The plaintiff's evidence in this case essentially consisted of three elements: the plaintiff's own testimony; medical records admitted under G. L. c. 233, § 79G (1990 ed.); and testimony from the plaintiff's expert witness, K. Richard Bruhn, a vocational rehabilitation counselor. The Authority presented no evidence.

"The role of an expert witness is to help the jury understand issues of fact beyond their common experience. Under modern standards, expert testimony on matters within the witness's field of expertise is admissible whenever it will aid the jury in reaching a decision, even if the expert's opinion touches on the ultimate issues that the jury must decide. *Commonwealth* v. *LaCorte*, 373 Mass. 700, 705 (1977). *Commonwealth* v. *Montmeny*, 360 Mass. 526, 527-528 (1971)." *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982). The expert testified that his expertise consisted of locating employment for injured disabled persons, and "determining what type of work someone could have done prior to an injury or an illness, and then what kind of work they can do as a result of that injury or illness." The evidence would permit the judge to conclude that Bruhn was well qualified, therefore, to offer expert testimony on the plaintiff's inability to work paid police details and to teach self-defense as a result of his injuries.[3] See 8 P.M. Deutsch & F.A. Raffa, Damages in Tort Actions § 100.53, at 100-21 (1992) (vocational rehabilitation counselor able to provide assessment of vocational handicaps resulting from injury, and impact on range of job alternatives and individual's base earning capacity).

There was no problem, therefore, with the expert's testimony regarding the impairment of the plaintiff's earning capacity for the period between the time of the accident and the time of the trial. There was adequate medical evidence in the record concerning the plaintiff's incapacity during this time period.

---

[3]The Authority did not challenge Bruhn's qualifications as an expert witness.

There was a problem, however, with the expert's testimony concerning the impairment of the plaintiff's future earning capacity. The expert testified that he assumed that the plaintiff would be unable to work on paid details and to teach self-defense up until the mandatory retirement age of sixty-five for police officers, and the expert then calculated the potential loss of future earning capacity for the plaintiff based on that assumption. The major difficulty with the expert's assumption concerning the permanency of the plaintiff's injuries is that this assumption was outside of the area of the expert's expertise and was not supported by any evidence in the record before this court.[4] See *Roddy* v. *Fleischman Distilling Sales Corp.*, 360 Mass. 623, 627 (1971) (defendant entitled to new trial where expert testified not only to hypothetical question unsupported by the evidence but also to his opinion which may have been beyond his qualifications).

Although the expert was qualified to offer his opinion on the plaintiff's inability to work paid police details and to teach self-defense classes, the expert was not qualified to testify on the issue of the permanency of the plaintiff's injuries. The expert's direct personal knowledge in the area of vocational rehabilitation counseling did not qualify him to testify about the extent or duration of the plaintiff's injuries. See *Commonwealth* v. *Weichell*, 390 Mass. 62, 78 (1983) (photography expert unqualified to testify on the subject of human perception), cert. denied, 465 U.S. 1032 (1984); *Commonwealth* v. *Seit*, 373 Mass. 83, 91-92 (1977) (ballis-

---

[4]The plaintiff argues on appeal that the Authority failed to object to this line of questioning. The record indicates, however, that, while the Authority did not specifically object to the plaintiff's question to the expert concerning the impairment of the plaintiff's future earning capacity, the Authority had already objected twice to the plaintiff's questions to the expert concerning the impairment of the plaintiff's earning capacity. On both occasions the judge instructed the jury that they were not bound to accept the expert's opinion and that it was proper for the expert to testify concerning the impairment of the plaintiff's future earning capacity. In these circumstances, any further objection by the Authority would have been futile and we believe that the Authority objected properly to this line of questioning. See *Commonwealth* v. *Rubio*, 27 Mass. App. Ct. 506, 511 n.4 (1989).

tician unqualified to testify in area of physiology or pathology); *Carlson* v. *Holden*, 358 Mass. 22, 25-26 (1970) (expert qualified as civil engineer, land surveyor, and sanitary engineer unqualified on subject of development of acreage into building lots); *Lee Lime Corp.* v. *Massachusetts Turnpike Auth.*, 337 Mass. 433, 436-437 (1958) (real estate expert unqualified to opine as to value of limestone plant or quarry). See also P.J. Liacos, Massachusetts Evidence 111 (5th ed. 1981) ("The fact that a person qualifies as an expert in one subject does not qualify him to give an expert opinion in regard to another, albeit somewhat related, subject, however").

The expert's assumption that the plaintiff's injuries were permanent is also unsupported by any evidence in the record before this court. See *Kennedy* v. *U-Haul Co.*, 360 Mass. 71, 73-74 (1971) ("A mere guess or conjecture by an expert witness in the form of a conclusion from basic facts that do not tend toward that conclusion any more than toward a contrary one has no evidential value"); *Sevigny's Case*, 337 Mass. 747, 751 (1958) ("an opinion given by an expert will be disregarded where it amounts to no more than mere speculation or a guess from subordinate facts that do not give adequate support to the conclusion reached"); *McCarthy* v. *Hauck*, 15 Mass. App. Ct. 603, 610 (1983) (jury lacked a basis for finding in favor of plaintiff where plaintiff's sole expert relied on an assumption not supported by the evidence). The plaintiff's own testimony could not furnish the expert with adequate evidence to determine the extent and duration of his injuries. See *Nisbet* v. *Medaglia*, 356 Mass. 580, 583 (1970) (plaintiff's testimony concerning his pain and suffering does not supply evidence of impairment of earning capacity); *Williamson* v. *Feinstein*, 311 Mass. 322, 324 (1942) (same). Compare *Griffin* v. *General Motors Corp.*, 380 Mass. 362, 366 (1980) (in addition to plaintiff, doctor testified concerning probability of increase in plaintiff's loss of function).

The only other evidence in the record that potentially could have been used to support the expert's assumption concerning the permanency of the plaintiff's injuries was his

medical records, admitted in evidence under G. L. c. 233, § 79G.[5] The most cogent evidence of the likelihood of the extent and duration of the plaintiff's injuries within these records is contained in a letter from the plaintiff's chiropractor, Dr. Robert DiFonzo. The most relevant portions of Dr. DiFonzo's letter, relied on by the Appeals Court in its unpublished memorandum to support its conclusion that the jury were warranted in concluding that the plaintiff's injuries are permanent, are as follows: "Since [the plaintiff] has been treated at this office he has made some progress within a reasonable period of time. The [plaintiff] has shown only partial relief of his symptomatic state. [The plaintiff's] condition is now in a chronic state. . . . In my opinion, this patient may continue to experience episodes of low back pain due to the nature of his injury, stress of work and normal daily activities for an indefinite period of time." Dr. DiFonzo's conclusion that the plaintiff "may continue to experience episodes of low back pain," does not support the expert's assumption that the plaintiff suffered a permanent injury, but only that he possibly suffered such an injury. See *Alholm v. Wareham*, 371 Mass. 621, 627 (1976) ("the evidence must contain facts from which reasonable inferences based on probabilities rather than possibilities may be drawn"). No other medical

---

[5]The medical records provide the basis for the Authority's other argument on appeal. After the plaintiff's medical records were admitted in evidence under G. L. c. 233, § 79G (1990 ed.), and later read into the record without objection, the Authority requested a curative instruction to the jury that they should not consider any of the medical evidence that they did not understand. Although the judge, in refusing the Authority's request, stated that he would instruct the jury in his general instructions that they not decide any disputed questions on the basis of speculation, conjecture, or surmise, the Authority failed to include the judge's actual instructions to the jury in the record appendix. We are unable, therefore, to consider fully the Authority's argument in the absence of the judge's final instructions to the jury. Nevertheless, we conclude that the medical records admitted under G. L. c. 233, § 79G, did not require immediate curative or limiting instructions, and that the judge, therefore, did not abuse his discretion. See *Commonwealth v. Copeland*, 375 Mass. 438, 442 (1978) (hospital records, standing alone, are competent proof of the medical facts treated therein).

record provides any analysis of the extent or duration of the plaintiff's injuries.

While the trial judge erred in these circumstances in allowing the expert to testify on the impairment of the plaintiff's future earning capacity, the Authority is not entitled to a new trial unless the error has injuriously affected its substantial rights. See G. L. c. 231, §§ 119, 132 (1990 ed.); *Sacco* v. *Roupenian*, 409 Mass. 25, 30 (1990); *Grant* v. *Lewis/Boyle, Inc.*, 408 Mass. 269, 275 (1990). If this incompetent evidence may have influenced the jury, the Authority is entitled to a new trial. *Middlesex Supply, Inc.* v. *Martin & Sons*, 354 Mass. 373, 375 (1968). We believe that the expert's incompetent testimony may well have influenced the jury.

"The process of ascertaining the amount of compensation to be awarded for impairment of the capacity to work requires, first, the determination of the extent to which such capacity has been diminished and, second, the fixing of the amount of money which will compensate for the determined extent of impairment." *Shea* v. *Rettie*, 287 Mass. 454, 456 (1934). The determination of the extent of the plaintiff's diminished capacity must be based, at least, on probabilities. See *Halnan* v. *New England Tel. & Tel. Co.*, 296 Mass. 219, 221-222 (1936) (impairment of earning capacity includes "*probable* impairment of his future capacity" [emphasis added]); *Rooney* v. *New York, N.H. & H.R.R.*, 173 Mass. 222, 227 (1899) (damages for loss of earning capacity limited to amount necessary "to compensate for a *probable* annual loss for a *probable* term of years" [emphasis added]); Restatement (Second) of Torts § 912 comment e (1979) ("When an injured person seeks to recover for harms that may result in the future, he is entitled to damages based upon the *probability* that harm of one sort or another will ensue and upon its *probable* seriousness if it should ensue. When a person has suffered physical harm that is more or less permanent in nature . . . he is entitled to recover damages not only for harm already suffered, but also for that which *probably* will result in the future" [emphasis added]).

There is no evidence in the record, based on probabilities and not just possibilities, except for the expert's incompetent testimony on the impairment of the plaintiff's future earning capacity, that the plaintiff's injuries are of a permanent nature, or any other inference concerning the duration of his impairment. In these circumstances, we conclude that the incompetent testimony was not harmless and may have influenced the jury, and that the Authority, therefore, is entitled to a new trial on the issue of the plaintiff's loss of earning capacity.

*So ordered.*