ARMSTRONG, Judge.
In this appeal arising out of a medical malpractice action, plaintiffs, Linda Ann Nor-fleet and her husband, Bradford, and defendant, the Louisiana Patient’s Compensation Fund, appeal portions of the judgment of the trial court. We amend the judgment of the trial court, and affirm it as amended.
In October, 1987, plaintiff, Linda Norfleet, then twenty-four years old, entered Southern Baptist Hospital (“SBH”) to deliver her second child. She claimed that an SBH employee negligently administered an intramuscular injection injuring her right sciatic nerve, resulting in her having a condition commonly known as “drop foot.” A medical review panel found that SBH breached its duty to comply with the appropriate standard of care. Plaintiff subsequently instituted this action against SBH. Thereafter, plaintiff settled her claim against SBH, reserving her right to proceed against the Louisiana Patient’s Compensation Fund (the “PCF”) for additional damages not to exceed $400,000.00, in accordance with the Medical Malpractice Act, La.R.S. 40:1299.41 et seq.
The PCF stipulated to liability and, after a bench trial, the trial court rendered judgment awarding plaintiff a total of $437,871.60 in damages, subject to a $100,000.00 credit, plus interest and costs. A motion for new trial filed by the PCF was denied and this appeal was taken. Plaintiffs answered PCF’s appeal.
The PCF claims the trial court erred (1) in awarding excessive general damages; and (2) in awarding special damages for past and future loss of income and earning capacity which were not supported by the record. Plaintiffs claim the trial court erred (1) in failing to award medical expenses in the amount of $7,233.12; (2) in failing to award Bradford Norfleet, Linda’s husband, damages for loss of consortium; and, (3) in refusing to allow plaintiffs to present evidence concerning orthopedic problems with Linda’s left knee that she claims were causally related to the sciatic nerve injury.
GENERAL DAMAGES
The trial court awarded plaintiff general damages for pain and suffering in the amount of $250,000.00. The PCF claims the trial court erred in awarding excessive general damages.
A trial court’s attempt to measure the monetary value of intangibles such as grief, loss of love and affection, and loss of companionship are necessarily subject to great discretion. The basic question to be considered is whether the general damage award is so high as to shock the conscience of the reviewing court. Bourgeois v. Puerto Rican Marine Management, Inc., 589 So.2d 1226 (La.App. 4th Cir.1991), units denied, 592 So.2d 1299, 1300 (La.1992). Before an appellate court can disturb a trial court’s award of general damages, the record must clearly reveal that the trier of fact abused its discretion in making the award. Only after finding that the record shows the trial court abused its discretion can the appellate court disturb the award, and then only to the extent of raising or lowering it to the highest or lowest point which would have been within *894 the discretion afforded the trial court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Reck v. Stevens, 373 So.2d 498 (La.1979); Burton v. Berthelot, 567 So.2d 649 (La.App. 4th Cir.1990), unit denied, 569 So.2d 989 (La.1990).
General damages must be determined on a case-by-ease basis since they do not have a common denominator. Bernard v. Royal Insurance Co., 586 So.2d 607 (La.App. 4th Cir.1991), writ denied, 589 So.2d 1058 (La.1991). Before an appellate court questions a trial court award as inadequate or excessive, it must look not to prior awards, but to the individual circumstances of the instant case. Reck v. Stevens, supra; Burton v. Berthelot, supra.
Linda Norfleet was twenty-four years old when she entered SBH to have her second child. Linda testified that after delivering her baby, after the epidural should have worn off, she noticed that her right leg still felt numb and cold. This was the first indication that something was wrong. Dr. Gerald F. Burns examined Linda soon after her injury. Based on the history given him and his examination, Dr. Burns believed that the sciatic nerve in Linda’s right leg was struck by a needle when she was administered an injection. He described the sciatic nerve as the largest nerve fiber in the body.
On examination, Dr. Burns found weakness in all muscle groups in Linda Norfleet’s right lower extremity except for her quadriceps. He said that all of the muscles supplied by the sciatic nerve were affected by the injury. Below the knee he found significant sensory loss. He noted a decrease in the mass of the calf due to atrophy from loss of nerve function. Dr. Burns characterized the injury to Linda as severe. He said that Linda had “drop foot,” meaning that she is unable to hold her foot up. When she walks, she has to lift her right leg up higher than normal. Dr. Burns also testified that Linda’s ankle is noticeably weaker and was concerned she could fracture or break it. She wears a brace designed to keep her foot from dropping. The brace helps Linda walk more normally. However, Linda has complained to him that she walks with a different gait or a limp.
It was Dr. Burn’s opinion that Linda’s condition would not improve in the future. He said she has weakness in her lower extremity, significant weakness of flexion, and weakness in all of the muscles below the knee. He believed she would have pain but that it would not be a major problem. However, he said that if Linda pushes herself she might have some muscle spasm, and that any stressful exercise involving the foot would give her problems. He said she would not be able to walk for long periods of time. He also thought it was more likely than normal that Linda would develop arthritis. He said she could do work alternating standing and sitting down, but could not stand all day.
Dr. Burns gave Linda an 80% permanent impairment of the lower right extremity, a 56% permanent impairment of the whole lower extremity, and a 22% permanent impairment of the whole body.
Dr. Edward D. Levy Jr., a psychiatrist, treated Linda Norfleet for symptoms of depression from July, 1988 to May, 1991. He testified that she related her depression to losing a child and to not being able to engage in physical activity. Only the latter factor is causally related to the sciatic nerve injury. When he first examined Linda Norfleet, Dr. Levy recommended that she take an antidepressant medication. That was later discontinued when it proved ineffective. Linda related her attempts to establish a normal routine within her limitations. Dr. Levy testified that Linda got depressed about her condition preventing her from keeping up with other family members when on vacation. She felt that members of her family did not appreciate the limitations imposed on her by her injury. Dr. Levy stated that she also gets depressed about her inability to work as she used to.
Dr. Levy testified that the injury to Linda caused a loss of function. This loss of function caused the depression. By May, 1991, Dr. Levy said, Linda’s depression had eased. However, he noted that this depressive episode left her more prone to suffer from future depression.
Linda Norfleet testified that she still experiences pain in her leg, primarily when she *895 engages in certain activities such as walking long distances or when she stands for long periods. Linda testified that she used to engage in many sporting activities that she does not do now. She cannot run so that limits her in this regard. She used to water ski, canoe, hike, bowl, dance, and play tennis and basketball. Engaging in strenuous activity results in her having pain afterwards. She often sits in the bathtub and soaks her leg, even after simply walking too much. She and her husband used to go to his parents’ camp on weekends and swim, fish and water ski. She stated that they stopped going for about one year following her injury. They now go but her activities are limited. She no longer water skis and cannot go out in the boat for all-day fishing trips. She primarily fishes from the dock now. Linda can no longer play vigorously with her son, Brad, as she used to.
Linda also testified that she feels self-conscious about wearing the brace and cannot wear high-heeled shoes anymore. She stated that her ankle is wobbly and that it is hard for her to walk on uneven surfaces. She said she experiences pain on a daily basis. She attempted to work at a local department store one Christmas season but was unable to continue because it required her to stand all day. She said she experienced bad pain in her leg every day she worked. She also attempted to work at a construction company doing clerical work. She experienced pain at the end of each day she worked there. Linda can drive a car with automatic transmission by using the heel of her right foot. She testified that as far as she is concerned, her sex life with her husband has not been affected, but said her husband might have a different view. She admitted that she and her husband were not close anymore.
Linda’s mother-in-law and her sister confirmed much of Linda’s testimony concerning her limitations and life since the injury. Her mother-in-law testified that Linda used to be very “happy-go-lucky” before the injury. Since, the incident, she said Linda has been depressed. She said Linda is a “changed woman.” Linda’s sister testified that prior to her going into SBH to deliver her second child, Linda had no physical disability or medical problems. She stated that Linda used to enjoy dressing up and going out dancing with her friends. She also used to do a lot of things with her young son. She doesn’t do the same things anymore. Her sister also said that Linda is not as outgoing as she was before the injury.
Bradford Norfleet, Linda’s husband, testified that before her injury his wife was a happy, outgoing and cheerful person. He said Linda has taken her injury and the limitations on her daily life very hard. He said she has crying spells and gets depressed. Bradford said when his wife exerts herself, such as when they went to a recent New Orleans Saints football game at the Louisiana Superdome, she has to come home and rest and sometimes soak her leg in the tub to relieve pain. She cannot sit or stand too long. They have to worry about whether Linda will be able to do certain activities. He said the injury has changed “our way of life pretty drastically.”
In an attempt to rebut the testimony concerning the limitations on Linda’s activities, defendant presented the testimony of two private investigators who observed and followed Linda and Bradford when they attended two New Orleans Saints football games at the Louisiana Superdome. The investigators testified that Linda appeared to walk normally and at a regular pace, even quickly at times. They also said she appeared to negotiate the Superdome ramps and stairs normally. They admitted that she was wearing her brace at all times she was observed.
Linda Norfleet was twenty-four years old when she was injured through the negligence of a SBH employee. She has a 22% permanent impairment of her whole body and an 80% permanent impairment of her right lower extremity. Considering all of the testimony about the enormous and adverse impact the injury has had on Linda Norfleet’s life, we are unable to say that the award of general damages, $250,000.00, is a clear abuse of discretion or so high as to shock the conscience.
*896 LOSS OF INCOME AND EARNING CAPACITY
The trial court awarded Linda Norfleet $171,871.60 in damages for past and future loss of income and earning capacity. Although the trial court did not break down the amount into past and future, Linda’s expert economist, Dr. Goodman, testified that Linda’s past loss of income from the date of injury to the date of trial was $28,259.07. Defendant does not appeal this portion of the income award. Therefore, we will assume that the balance of the total income award, $143,612.53, represents future loss of income and earning capacity.
Before she can recover damages for future lost wages, a plaintiff must prove the loss with reasonable certainty. Whatley v. Regional Transit Authority, 563 So.2d 1194 (La.App. 4th Cir.1990), writ denied, 569 So.2d 965 (La.1990). See also, McGowan v. Sewerage and Water Board of New Orleans, 555 So.2d 472 (La.App. 4th Cir.1989). However, such damages need not be proven with mathematical certainty. Whatley v. Regional Transit Authority, supra. Loss of future income is not merely predicated upon the difference between a plaintiffs earnings before and after a disabling injury, but upon the difference between a plaintiffs earning capacity before and after an injury. Folse v. Fakouri, 371 So.2d 1120 (La.1979); Perkins v. Ricks, 514 So.2d 180 (La.App. 4th Cir.1987), writ denied, 519 So.2d 117 (La.1988).
In arguing that the damages for loss of income were not supported by the record, defendants rely heavily on the testimony of Linda’s treating physician, Dr. Burns, who stated at one point during his testimony that he thought plaintiff could perform a job alternating sitting and standing without difficulty. However, Dr. Burns also testified that he instructed Linda to do anything that she could tolerate and that she is the one who determines what she can tolerate.
Balanced against that statement by Dr. Burns is the testimony of a vocational rehabilitation specialist, Bobby S. Roberts who was qualified as an expert in the field of vocational evaluation. Roberts performed extensive diagnostic tests, having Linda do tasks to simulate work environments. He also performed intelligence testing. Roberts concluded that Linda was suited for clerical work — sales, filing, shipping, etc. — and could do work as a bank teller. However, he also determined that Linda met the functional criteria for sedentary work for only three hours and, thus, that it would be difficult for her to find anything other than a minimum wage job. He believed Linda had symptoms that made her unable to work full-time. He said Linda could not even do consistent work for three hours. After approximately two- and-a-half hours of simulated clerical work Linda started complaining of pain and became uncomfortable. Roberts said Linda had problems with her right hip and right lower extremity and that by the time she left his office after testing her whole right lower extremity changed color to purplish blue.
Defendant presented the testimony of Beverly Mann, who was qualified by the court as a vocational rehabilitation counselor. Ms. Mann testified that she determined that Linda Norfleet could stand for thirty minutes and sit for an hour. She felt Linda could work as a cashier or a “proof sorter,” and possibly as a bank teller. Ms. Mann admitted that she did not determine what Linda’s physical capabilities were but based her opinion on Dr. Burn’s report.
The trial court apparently accepted the testimony of Bobby Roberts because it awarded Linda the amount calculated by her expert economist, Dr. Seymour Goodman, as her lost future earnings based on a two-and-a-half hour work day. Dr. Goodman calculated a figure of $143,606.48, based on Linda being able to work two-and-a-half hours a day, five days a week, at minimum wage. That amount, $143,606.48, is $6.05 more than what defendant agrees was awarded for lost future income.
Citing Adams v. Phillips, 506 So.2d 651 (La.App. 4th Cir.1987), defendant submits that the testimony by Dr. Burns that Linda could perform work if she alternated between standing and sitting, solely because it was medical testimony by her treating physician, was more credible than the testimony of Bobby Roberts. In Adams this court stated:
*897 A plaintiff is not entitled to special damages for impairment of earning capacity where her physical ability to continue prior work is not diminished to any significant extent and medical testimony is introduced that she could resume the work she performed during a major part of her working career.
Id. at 654.
We decline to accept defendant’s argument or read Adams as barring the award for loss of income made in this case. Linda Norfleet used to work as bank teller, normally standing up all day. Even the testimony of Dr. Burns cited by defendant precludes her from returning to that type of work requiring her to stand up all day. Beverly Mann’s testimony excludes the possibility of Linda doing work requiring her to stand all day. The testimony of the expert vocational evaluator, Bobby Roberts, established that plaintiff could not work more than two-and-a-half or three hours a day. Therefore, it was established that Linda’s physical ability to continue prior work, cashier or bank teller, was diminished as a result of the injury. Bobby Roberts opinion was based on actual physical testing in simulated work place. Dr. Burns’ testimony as a whole can be reasonably interpreted to mean that Linda could work in a job alternating standing and sitting if she could tolerate it. Bobby Roberts testimony established that she could not tolerate it.
We cannot say that the trial court would have been clearly wrong to find that Linda could not work more than two-and-a-half’ hours a day and that the jobs available to her within those limitations were minimum wage jobs. Accepting that finding, the trial court could also have found that Dr. Goodman’s calculations were correct and awarded Linda $143,606.48 for loss of future income and loss of earning capacity. We will reduce the award of special damages for loss of income by $6.05.
MEDICAL EXPENSES
Linda Norfleet claims the trial court erred in failing to award her $7,332.12 in medical expenses incurred by her for treatment of complications arising as a result of her injury. In its brief on appeal, defendant does not address this issue. Both sides stipulated that these expenses were incurred by Mrs. Norfleet and evidence was introduced supporting the expenses. Therefore, the trial court erred in failing to award Linda Nor-fleet $7,332.12 in medical expenses. The judgment will be amended accordingly.
LOSS OF CONSORTIUM AND SOCIETY
Linda Norfleet’s husband, Bradford, claims the trial court erred in failing to award him any damages for loss of consortium. Under La.C.C. art. 2315, a spouse of an injured person may recover damages for loss of consortium, service and society. Consortium and society often overlap and may be considered to encompass loss of sexual relations, love and affection, companionship, and felicity or overall contentment and happiness. See Morton v. Ray, 611 So.2d 841 (La.App. 4th Cir.1992), writ denied, 618 So.2d 404 (La.1993); Vaccaro v. Smith & Imports, Inc., 539 So.2d 989 (La.App. 4th Cir.1989), writs denied, 541 So.2d 1391, 1392 (La.1989). There is no evidence in the instant ease that Bradford Norfleet had a claim for loss of service, that is, for any expenses incurred by him or the family for the loss of services previously performed by Mrs. Norfleet. Our inquiry will be limited to consortium and society.
In the instant case, whether or not Mr. Norfleet suffered any loss of consortium and society is a question of fact. The trial court apparently found that Mr. Norfleet did not suffer any such damages. Therefore, we may not disturb that finding of fact unless the evidence does not furnish a basis for the finding or the finding is nevertheless clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Linda Norfleet testified that she did not think her sex life with her husband had suffered as a result of her injury. However, she also stated: “To him, maybe.” In addition, she said: “Now it’s more like he does his thing and I do my thing. We are not close.” These statements clearly indicate that the couple has grown apart since the *898 injury. From her husband’s perspective, things have changed. Bradford Norfleet testified that Linda’s injury and resulting physical limitations changed “our way of life pretty drastically.” He said that he and Linda do not do all of the things together that they used to. This tracks Linda’s testimony. He also stated that the couple argues sometimes because he gets upset when he comes from work and has to do household chores that Linda was unable to do because she had a bad day. Alluding to the lack of opportunity for sex, Bradford testified that his wife often does not come to bed until after he is asleep because she soaks her leg in the bathtub to relieve pain and discomfort.
Considering the evidence as a whole, we believe that the trial court was clearly wrong in failing to find that Bradford Norfleet sustained some loss of consortium and society as a direct consequence of his wife’s injury. The evidence as to a loss of sexual relations is sketchy, however, and we find no error in the trial court’s implicit finding that Mr. Norfleet sustained no damages for that loss. Therefore, we will amend the judgment of the trial court to award Mr. Norfleet $5,000.00 in damages for loss of consortium and society, excluding sexual relations.
KNEE INJURY
The trial court refused to let plaintiffs introduce evidence concerning arthroscopic surgery performed on Linda Norfleet’s left knee which she alleges was causally related to the injury to her sciatic nerve. The trial court allowed plaintiffs to proffer testimony by Dr. Burns that there was a causal relationship between the two. Plaintiffs now ask this court to remand the case to allow Linda Norfleet to present testimony and medical bills relating to the left knee surgery.
Besides the proffered testimony of Dr. Burns, the only information before us regarding this issue is a copy of an alternative motion to continue or exclude testimony and attached memorandum in support thereof which was apparently filed by defendant, but left out of the record. These documents are attached to the plaintiffs’ appellate brief. The trial court refers to the motion in the trial transcript and states that it will exclude the evidence but allow the proffer. The court gave no reasons for its ruling. Plaintiffs’ opposition to the motion is contained in the record. In their opposition and in their appellate brief, plaintiffs refer to and do not dispute the facts as recited in defendant’s memorandum.
The memorandum states that on October 10, 1990 plaintiffs’ counsel advised defense counsel that Mrs. Norfleet had undergone arthroscopic surgery on her left knee and that her orthopedist and Dr. Burns would testify that this injury and surgery were directly related to and caused by the injury to the right sciatic nerve. At that time, trial was set for November 13, 1990, one month away. The next day, then-defendant SBH filed a motion to continue the trial so that it could conduct discovery as to this claim of which, until then, SBH had been unaware. Less than two weeks later, counsel for plaintiffs notified defense counsel that the new issue concerning the left knee would not be raised at trial because the orthopedist who performed the surgery did not believe it was related to the sciatic nerve injury.
After being rescheduled for June 12, 1991, trial was ultimately scheduled for September 23, 1991. On July 30, 1991 counsel for plaintiffs again notified defense counsel that they intended to introduce evidence relating the left knee injury and surgery to the sciatic nerve injury. Counsel for defendant then filed the alternative motion to continue or exclude testimony, claiming that it did not have sufficient time to conduct adequate discovery.
The issue before us is whether the trial court abused its great discretion in excluding the testimony. Considering all of the facts and circumstances, we are unable to say that the trial court abused its discretion in granting defendant’s motion to exclude the evidence. The trial court may have felt that defendant would have been prejudiced by allowing plaintiffs to present the evidence, especially in light of plaintiffs having previously assured defendant that they were not going to do so.
For the foregoing reasons we amend the judgment of the trial court to (1) reduce the *899 award of damages for past and future loss of income and earning capacity from $171,-871.60 to $171,865.55; (2) award plaintiff Linda Norfleet past medical expenses in the amount of $7,332.12; and (3) award plaintiff Bradford Norfleet $5,000.00 for loss of society. We affirm the judgment of the trial court in all other respects.
AMENDED; AFFIRMED AS AMENDED.