438 S.E.2d 590

**Carolyn LISTON and Daley Liston, Husband and Wife, Plaintiffs Below, Appellees,**

v.

**The UNIVERSITY OF WEST VIRGINIA BOARD OF TRUSTEES on Behalf of WEST VIRGINIA UNIVERSITY, Defendant Below, Appellant.**

**No. 21546.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 1993.

Decided Dec. 13, 1993.

---

412

John R. Angotti and David J. Straface, Angotti & Straface, Morgantown, for appellees.

William E. Galeota and P. Gregory Haddad, Steptoe & Johnson, Morgantown, for appellant.

MILLER, Justice:

This is an appeal from a jury verdict and final order of the Circuit Court of Monongalia County dated July 13, 1992, in favor of the appellees and plaintiffs below, Carolyn Liston and Daley Liston. Carolyn Liston suffered an injury to her right arm and elbow when she slipped and fell on standing water in a building owned and maintained by the appellant and defendant below, The University of West Virginia Board of Trustees. The jury awarded, *inter alia,* general damages for Mrs. Liston's loss of earning capacity and her loss of enjoyment of life (hedonic damages). The defendant appeals on the basis that (1) the plaintiffs failed to prove any loss of earning capacity, and (2) the plaintiffs' expert testimony concerning hedonic damages was inadmissible. We agree with the defendant's latter contention.

## I.

## LOSS OF EARNING CAPACITY

At trial, the defendant sought to preclude testimony from the plaintiffs' economic expert concerning Mrs. Liston's loss of earning capacity on the basis that no "reasonably certain" evidence of loss of earning capacity had been presented by the plaintiffs. The defendant points to the testimony of Dr. Gregg O'Malley, Mrs. Liston's treating physician, who testified by way of a video deposition that he had no way to predict, to a reasonable degree of medical certainty, whether Mrs. Liston would be able to continue performing the functions of her employment into the future.[1]

On the other hand, Dr. O'Malley testified that Mrs. Liston suffered a *permanent* 17 percent whole-person impairment as a result of the injury. He also stated that Mrs. Liston's injury required surgery to repair the damage, and that two metal pins had to be placed in her arm. He was not certain whether those pins would have to be replaced in the future, or whether Mrs. Liston's injury would require further surgical procedures.

At trial, the plaintiffs also presented the expert testimony of Cathy Johnson, a vocational and rehabilitation counselor. She testified that she specialized in evaluating injured persons from a vocational perspective in regard to the impact of injuries upon an individual's ability to work. Ms. Johnson testified that after reviewing Dr. O'Malley's medical reports and deposition, she concluded that Mrs. Liston could not find any employment due to the restrictions resultant from her injury.

The plaintiffs then presented the expert testimony of Daniel Selby, an economist, who testified that, based upon Ms. Johnson's evaluation, Mrs. Liston's loss of earning capacity equaled between $79,973 and $156,851.

■ The defendant neglects to address the evidence provided by Ms. Johnson to the jury. Instead, the defendant argues that because Dr. O'Malley could not state, to a reasonable degree of medical certainty, that Mrs. Liston could not continue working, no reasonably certain evidence was offered to support Mr. Selby's economic calculations. Clearly, however, this assertion overlooks the value of Ms. Johnson's expert testimony.

---

1. Mrs. Liston was employed as a vending machine attendant, which involved the carrying of merchandise from a delivery truck to the machine and filling the machines.

In *Adkins v. Foster,* 187 W.Va. 730, 733, 421 S.E.2d 271, 274 (1992), we set forth the necessary elements of proof regarding future damages, including the loss of future earning capacity, when we stated: "[I]mpairment of earning capacity is a proper element of recovery when two elements have been proven: permanent injury and reasonable degree of certainty of the damages." *Citing Jordan v. Bero,* 158 W.Va. 28, 52, 210 S.E.2d 618, 634 (1974). The foregoing elements of proof are reflected in Syllabus Points 1 and 2 of *Adkins:*

> "1. 'The permanency or future effect of any injury must be proven with reasonable certainty in order to permit a jury to award an injured party future damages.' Syl. Pt. 9, *Jordan v. Bero,* 158 W.Va. 28, 210 S.E.2d 618 (1974).
>
> "2. ' "Future damages are those sums awarded to an injured party for, among other things: (1) Residuals or future effects of an injury which have reduced the capability of an individual to function as a whole man; (2) future pain and suffering; (3) loss or impairment of earning capacity; and (4) future medical expenses." Syllabus Point 10, *Jordan v. Bero,* [158] W.Va. [28,] 210 S.E.2d 618 (1974).' Syl. Pt. 2, *Flannery v. United States,* 171 W.Va. 27, 297 S.E.2d 433 (1982)."

2. As early as *Carrico v. West Virginia Central & Pacific Railway Co.,* 39 W.Va. 86, 103, 19 S.E. 571, 577 (1894), where the plaintiff lost his arm while working for the railroad, we said that a jury could ascertain how far that injury "is calculated to disable the plaintiff from engaging in those pursuits and occupations for which, in the absence of said injury, he would have been qualified[.]"

3. In 22 Am.Jur.2d *Damages* § 168 (1988), this statement is made with regard to decreased earning capacity:
> "The fact that the injured party may continue to work and earn as much as or more than he formerly did does not bar him from recovering for loss of earning capacity. The fact that plaintiff's total earnings have remained the same or increased since the accident may be some evidence that there was no loss of earning capacity, but other evidence may warrant an award of damages for physical inability to perform formerly remunerative functions." (Footnotes omitted).

*See generally* Annot., 18 A.L.R.3d 88 (1968).

4. The vocational expert, Ms. Johnson, stated that Mrs. Liston had worked as a vending machine attendant for nineteen years. She was forty-nine years old at the time of her evaluation and had

We went on to quote the following from *Jordan v. Bero,* 158 W.Va. at 57, 210 S.E.2d at 637: " '[W]here the permanent injury is proven, reasonable inferences based upon sufficient evidence are all that is necessary to carry the question to the jury for its consideration.' " 187 W.Va. at 733, 421 S.E.2d at 274. The question in the case at bar does not concern Mrs. Liston's substantive right to receive a monetary award for loss of earning capacity as a result of a permanent personal injury.[2] We have recognized such a right in the foregoing cases. What is at issue herein is the type of proof that can be offered to quantify the amount of loss of earning capacity.[3]

Here, Mrs. Liston's doctor testified to her degree of permanent disability. He could not state with certainty whether this would limit her job opportunities or cause a loss of earnings. However, the plaintiff's vocational expert, after performing her own tests in the vocational area, was able to state that the plaintiff's earning capacity had been severely diminished because of her injury.[4] There is no question that other jurisdictions have recognized that a vocational expert may be used to prove loss of earning capacity.[5]

an eighth-grade education. Ms. Johnson reviewed the doctor's medical reports and talked with Mrs. Liston concerning her physical disabilities and continuing pain. Her aptitude test contained below average scores in spatial and finger dexterity and low average scores on general learning ability, as well as verbal and numerical aptitude, form and clerical perception, and eye/hand/foot coordination. Ms. Johnson also discussed in some detail her analysis of alternative jobs for Mrs. Liston and concluded that there were none for someone of the plaintiff's age, aptitude profile, and education.

5. *See, e.g., Norfleet v. Southern Baptist Hosp.,* 623 So.2d 891 (La.App.1993); *Timmons v. Mass. Bay Transp. Auth.,* 412 Mass. 646, 591 N.E.2d 667 (1992) ("[V]ocational rehabilitation counselor able to provide assessment of vocational handicaps resulting from injury, and impact on range of job alternatives and individual's base earning capacity." 412 Mass. at 648, 591 N.E.2d at 669, *citing* 8 P.M. Deutsch & F.A. Raffa, *Damages in Tort Actions* § 100.53 at 100–21 (1992)); *Ashby v. First Data Resources, Inc.,* 242 Neb. 529, 497 N.W.2d 330 (1993); *Riddle v. Anderson,* 85 Pa. Commw. 271, 481 A.2d 382 (1984); *Klingman v. Kruschke,* 115 Wis.2d 124, 339 N.W.2d 603 (App. 1983). *See generally,* P.M. Deutsch & H.W. Saw-

The vocational assessment was reviewed by an economist, Mr. Selby, who then calculated the dollar amount of diminished earning capacity over Mrs. Liston's work-life expectancy. Neither Ms. Johnson's nor Mr. Selby's qualifications nor their underlying methodology was attacked by the defense. We find that the proof from Mrs. Liston's experts in this case was relevant and reliable to support her monetary claim for loss of earning capacity under Rule 702 of the West Virginia Rules of Evidence.[6]

This case is not like the situation in *Adkins v. Foster, supra,* where the plaintiff suffered a cervical strain and exacerbation of her previous depression as a result of an automobile accident. The plaintiff had an orthopedist who testified that she had a permanent neck injury. A psychiatrist also testified that she had a permanent psychiatric disability. The plaintiff testified as to her rate of pay. Without any further expert evidence, the plaintiff's attorney calculated her rate of pay over her life expectancy and then divided this sum in half. He advised the jury that his calculation was the present value of her loss of earning capacity.

We concluded in *Adkins* that the type of calculation made by the attorney was improper and remanded the case for a retrial on the future economic loss arising from the loss of earning capacity. We did state, however: "We do not suggest that expert economic or vocational evidence is mandatory in every instance [to prove diminished earning capacity]." 187 W.Va. at 734, 421 S.E.2d at 275.

What emerges from our cases is that loss of earning capacity can be proved in two ways. The first step in either approach is that the plaintiff must establish that there exists a permanent injury which can be reasonably found to diminish earning capacity. The plaintiff may then rely on lay or the plaintiff's own testimony to acquaint the jury with the injury's impact on his or her job skills. When this is done, the jury may assess a general amount of damages for diminished earning capacity, as explained in *United States v. Flannery, supra; Jordan v. Bero, supra;* and *Carrico v. West Virginia Central & Pacific Railway Co.,* 39 W.Va. 86, 19 S.E. 571 (1894).

Where a plaintiff wishes to quantify the loss of earning capacity by placing a monetary value on it, there must be established through expert testimony the existence of a permanent injury, its vocational effect on the plaintiff's work capacity, and an economic calculation of its monetary loss over the plaintiff's work-life expectancy reduced to a present day value.[7]

In this case, the foregoing standards were followed in the calculation of the monetary amount of damages for loss of earning capacity. We find no error on this issue.

## II.

## HEDONIC DAMAGES

The other error alleged by the defendant concerns the trial court's admission of testimony by Mr. Selby regarding economic calculations for Mrs. Liston's loss of enjoyment of life. We recently addressed, at considerable length, the admissibility of such evidence in *Wilt v. Buracker,* W.Va., 1993 WL 517042 (No. 21708 12/13/93). In Syllabus Point 4 of *Wilt,* we determined that the loss of enjoyment of life cannot be made the subject of an economic calculation:

> *Buracker,* W.Va., 1993 WL 517042 (No. 21708 12/13/93): "Under Rule 702 of the West Virginia Rules of Evidence, there is a category of expert testimony based on scientific methodology that is so longstanding and generally recognized that it may be judicially noticed, and, therefore, a trial court need not ascertain the basis for its reliability."

yer, *A Guide to Rehabilitation* § 1.01 *et seq.* at 1–13 (1993).

6. Rule 702 of the West Virginia Rules of Evidence states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."
   We deem the expert testimony involved in this case admissible under Syllabus Point 1 of *Wilt v.*

7. The reduction to present day value on such an award was recognized in Syllabus Point 4 of *Adkins v. Foster, supra. See also Morris v. Boppana,* 182 W.Va. 248, 387 S.E.2d 302 (1989).

"The loss of enjoyment of life resulting from a permanent injury is a part of the general measure of damages flowing from the permanent injury and is not subject to an economic calculation."[8]

Clearly, then, the trial court erred when it admitted Mr. Selby's economic calculations concerning Mrs. Liston's damages for the loss of enjoyment of life.

### III.

### REMAND

In this case the jury verdict form did not itemize the damages, but listed only two separate categories—compensatory damages and general damages. The jury awarded compensatory damages in the amount of $5,888.43, and general damages, which included loss of enjoyment of life, in the amount of $121,859.[9] The jury did not distinguish between the various elements within the two categories of general damages. Thus, we cannot separate out the award of damages for the loss of enjoyment of life in this case as we did in *Wilt*.[10] There, we were able to offer the plaintiffs a remittitur for only the hedonic damages award because liability had been so clearly established and the damages assigned by the jury for the plaintiff's loss of enjoyment of life were itemized and specified in the jury verdict form.

In the case at bar, the jury tendered a verdict form assigning 100 percent negligence to the defendant. We find that there was conclusive evidence in the record to the effect that Mrs. Liston's injuries were the result of the defendant's negligence.[11] As we stated in Syllabus Point 9 of *Wilt*:

" ' "Rule 59(a), [West Virginia Rules of Civil Procedure], provides that a new trial may be granted to any of the parties on all or part of the issues, and in a case where the question of liability has been resolved in favor of the plaintiff leaving only the issue of damages, the verdict of the jury may be set aside and a new trial granted on the single issue of damages." Syl.Pt. 4, *Richmond v. Campbell*, 148 W.Va. 595, 136 S.E.2d 877 (1964).' Syllabus Point 3, *Gebhart v. Smith*, 187 W.Va. 515, 420 S.E.2d 275 (1992)."

Because liability was conclusively proven and is not contested upon appeal, this case must only be retried on the issue of Mrs. Liston's damages.[12] The plaintiffs shall have the option to retry the entire case, or, at their discretion, to try only the damages portion of the case.

---

8. In *Wilt*, 1993 WL 517042, *8, we compared the loss of enjoyment of life with damages for pain and suffering, stating:

    "[I]n order to lay to rest any future confusion over whether a different methodology may bring admissible evidence under Rule 702, we believe this is an issue similar to that addressed in *Crum v. Ward*, 146 W.Va. 421, 122 S.E.2d 18 (1961). In *Crum*, we held that, from a substantive law standpoint, testimony could not be introduced placing a monetary value on a plaintiff's pain and suffering. As we stated in Syllabus Point 4 of *Crum*:

    'In the trial of an action for damages for personal injuries based in part on pain and suffering, testimony attempting to place a money value on pain and suffering is inadmissible.' "

9. The relevant part of the jury verdict form reads as follows:

    "a. Compensatory damages (may include hospital, medical and doctor expenses, lost wages) $ 5,888.43 .

    "b. General damages (may include permanent injury, lost earning capacity, homemaker services, pain and suffering, past and future,

and loss of enjoyment of life, past and future) $ 121,859.00 ."

10. We note for the record that the jury did not return a verdict reflecting all the monetary damages sought by Mrs. Liston. Mrs. Liston presented evidence of the loss of homemaker services in an amount between $78,821 and $86,099, of her loss of earning capacity in an amount between $79,973 and $156,851, and of her hedonic loss in the amount of $241,665. Moreover, she presented evidence of past and future pain and suffering. Had the jury accepted all the damages claimed by Mrs. Liston, the verdict would have been substantially higher.

11. The defendant does not argue in its brief that liability was not conclusively proven.

12. We note that the jury also concluded that Mr. Liston had suffered no damages for the loss of his wife's consortium. Mr. Liston did not cross-assign error on this point. Consequently, we find the jury's decision in this regard conclusive and, therefore, that element of damages should not be retried.

IV.

CONCLUSION

Based upon the foregoing, the jury verdict and judgment order entered on August 13, 1992, by the Circuit Court of Monongalia County is affirmed, in part, and reversed, in part, and remanded for a new trial solely on the issue of damages, or, at the plaintiffs' discretion, for retrial of the entire matter.

Affirmed, in part; reversed, in part; and remanded.