**FILED**

**June 9, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-1042 – *Fairmont Tool, Inc. v. Opyoke*

WOOTON, J., dissenting:

Respondent was entitled to and repeatedly requested information from his employer about FMLA leave to allow him to immediately begin life-saving cancer treatments. His employer repeatedly failed to respond to his inquiries causing him to delay cancer treatment for four months until his cancer had spread and there was "no more waiting." Respondent was then laid off within days of finally being advised of his rights under the FMLA, causing him to lose his insurance, treatment options, and precipitating another approximate five months of delay in obtaining treatment. Despite acknowledging all of the foregoing as either undisputed or definitively proven to a jury, the majority incredibly concludes that respondent has failed to show "prejudice" caused by the employer's actions, without explanation. Accordingly, I respectfully dissent.

The majority correctly explains that it is undisputed that respondent was eligible for FMLA benefits, that petitioner was covered by the FMLA, and that respondent was entitled to FMLA leave. Further, it correctly observes that it must credit the jury's conclusion that respondent gave proper notice of his intention to claim FMLA benefits and that petitioner interfered with those benefits. Notwithstanding the extensive testimony about his delay in seeking life-saving treatment because he could not obtain information about FMLA leave—much of which testimony the majority quotes in full—the majority somehow concludes that respondent failed to offer proof that he "suffered prejudice" as a result of petitioner's failure to notify him of his FMLA benefits. It does so despite the jury

1

clearly finding to the contrary, given that it was *expressly instructed* that prejudice must be shown for respondent to recover.[1] Nevertheless, the majority summarily disregards the jury's finding of prejudice in the face of unrefuted evidence that respondent suffered the ultimate "prejudice"—a life-threatening delay in medical treatment.

Respondent's trial testimony plainly revealed that his physicians recommended immediate leave for purposes of beginning chemotherapy:

> Q.     And when did your doctor recommend that you needed to start the treatment?
>
> A.     As soon as possible. As soon as I got the leave okayed he wanted to start then. He knew I wouldn't be able to work while undergoing the treatment.
>
> ***
>
> Q.     So the idea was to start right away?
>
> A.     Yes. The sooner the better.

As the majority correctly observes, the jury obviously credited petitioner's testimony that he repeatedly requested FMLA information from petitioner but was given a "run around" for approximately four months. As a result, he delayed obtaining cancer treatment until such time as his life was in such danger that he could wait no longer, with or without FMLA leave:

> Q.     Were you able to get any treatments from April until July 4th for your cancer?

---

[1] As the majority notes, the jury was instructed that respondent must show that petitioner's failure to notify respondent of his FMLA eligibility "resulted in an impairment of [his] rights and *resulting prejudice*[.]" (emphasis added).

A.      No. Since I couldn't get the treatment, they monitored it and that's when I -- at the end of July, I had to go in. They stick a scope into your bladder, and they found out that there was no more waiting, the cancer had -- was spreading too bad.

\*\*\*

Q.      Was your treatment for cancer delayed?

A.      In April, we wanted to start as soon as possible and at first I had to try to get leave which was being put off. So, yes. I mean, if I would have got the leave in April, it probably would have started in March.

Q.      And can you describe to the ladies and gentlemen of the jury how you felt during this delay?

A.      It was my life on the line. When you're dealing with cancer, every minute counts, every one, and to say no we're not going to deal with -- the staff at Fairmont Tool is so under trained. I mean, to -- would it have affected the outcome of my cancer, we'll never know, but we do know what happened.

Despite respondent's compelling testimony about the "death sentence" petitioner's delay portended, the majority finds no "evidence of record" that he suffered prejudice. What greater "prejudice" the majority believes is required is unclear.

More incredibly perhaps, after citing a litany of cases holding that prejudice may be presumed from and presents a "remediable harm" where the employee shows he or she would have "structured" their leave differently but for the interference, the majority concludes that respondent made no such showing: "Respondent presented no evidence as to how he would have structured his leave had Fairmont Tool advised him of his rights under the FMLA." Without question, respondent's testimony above demonstrates that he

3

would have taken FMLA leave *immediately*, rather than waiting until days before he was laid off, had petitioner properly advised him of his benefits and made the leave available to him. By the time petitioner confirmed respondent's FMLA leave eligibility in July, he was laid off within days. This lay-off caused him to lose his insurance which then caused a further delay in treatment, including being seen by a recommended specialist. But for petitioner's interference with his FMLA benefits, respondent could have begun and likely completed his treatment before he was laid off. What evidence of alternate "structuring" the majority would have preferred, it does not state. However, it is difficult to conjure a scenario on the whole which smacks more devastatingly of the type of FMLA interference forbidden by Federal law.

The only perceptible legal error in the FMLA interference verdict is in the measure of damages awarded by the jury. The damages awarded appear to relate to respondent's FMLA retaliation claim—lost wages incurred from the time he was lawfully laid off until he was unable to work due to cancer treatment. This claim was dismissed by the circuit court because it lacked evidence that the lay-off was retaliatory and respondent does not appeal that ruling. The proper remedy then, is to vacate the damages award and remand for a new trial on damages given that the jury was erroneously permitted to consider and awarded damages unrelated to the claim upon which it found liability. *See* Syl. Pt. 4, *Richmond v. Campbell*, 148 W. Va. 595, 136 S.E.2d 877 (1964) ("Rule 59(a), R.C.P., provides that a new trial may be granted to any of the parties on all or part of the issues, and in a case where the question of liability has been resolved in favor of the plaintiff

4

leaving only the issue of damages, the verdict of the jury may be set aside and a new trial granted on the single issue of damages."); *see also Miller v. WesBanco Bank, Inc.*, 245 W. Va. 363, 859 S.E.2d 306 (2021) (vacating jury award which included unrelated damages and remanding for new trial on damages only); *Jordan v. Jenkins*, 245 W. Va. 532, 859 S.E.2d 700 (2021) (remanding for new trial on damages where jury was improperly instructed); *Liston v. Univ. of W. Va. Bd. of Trustees on Behalf of W. Va. Univ.*, 190 W. Va. 410, 438 S.E.2d 590 (1993) (remanding for new trial on damages only where jury considered and awarded inadmissible damages).

Because the majority disregards the patent evidence of prejudice and ignores the jury's consensus that prejudice was shown, it improperly vacates the verdict entirely rather than remanding for a new trial on damages. Accordingly, I respectfully dissent.