## Commonwealth vs. William Frangipane.

Middlesex. February 5, 2001. - March 20, 2001.

Present: Marshall, C.J., Greaney, Ireland, Cowin, Sosman, & Cordy, JJ.

*Child Abuse. Witness,* Expert. *Evidence,* Expert opinion, Qualification of expert witness. *Practice, Criminal,* Judicial discretion.

At the trial of indictments for forcible rape of a child under the age of sixteen and indecent assault and battery on a person fourteen years or over, the judge acted within his discretion to qualify a Commonwealth witness, a licensed independent certified social worker, as an expert in child abuse and to admit her testimony concerning dissociation and recovered memory, what these conditions or symptoms are, and the fact that victims of trauma may experience them [533-535]; however, the judge erred in allowing the witness to testify beyond her qualification on the neurological or physical functioning of the brain or the science of how traumatic memory works [535-537]; where the complainant's credibility was the issue at trial, the improperly admitted expert testimony was prejudicial, and a new trial was required [537].

At the retrial of indictments for sexual abuse of a child, it would be appropriate for the trial judge to conduct a preliminary hearing pursuant to *Commonwealth* v. *Lanigan,* 419 Mass. 15, 25-27 (1994), if the Commonwealth seeks to introduce expert testimony on dissociative memory loss or recovered memory. [537-538]

Indictments found and returned in the Superior Court Department on July 25, 1996.

The cases were tried before *Robert W. Banks, J.*

The Supreme Judicial Court granted an application for direct appellate review.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

*David W. Cunis,* Assistant District Attorney, for the Commonwealth.

Greaney, J. A jury in the Superior Court convicted the defendant of forcible rape of a child under the age of sixteen years, G. L. c. 265, § 22A, and indecent assault and battery on

a person fourteen years or over, G. L. c. 265, § 13H. Repre-
sented by new counsel on appeal, the defendant contends that
the trial judge erred in (1) admitting expert opinion testimony
given by a social worker about the loss and recovery of a
traumatic memory through dissociation[1] because the opinion
testimony, in significant respects, concerned scientific and medi-
cal matters beyond the scope of the witness's competence; and
(2) failing to conduct a preliminary hearing under *Com-
monwealth* v. *Lanigan*, 419 Mass. 15 (1994), to determine the
reliability of the Commonwealth's proffered expert opinion
testimony on the subject of dissociative memory loss. We
granted the defendant's application for direct appellate review.
We agree with the defendant's first point and conclude that the
admission of portions of the objectionable expert testimony
caused prejudice that necessitates reversal of both convictions.
We refer the second issue (the need to conduct a *Lanigan* hear-
ing) to be addressed at retrial.

The Commonwealth presented evidence of the following. On
the evening of November 29, 1991, the complainant, then
fourteen years old and a freshman in high school,[2] went on a
church youth group outing with approximately twenty other
youths, as well as a few adult chaperones, including a priest.
The group boarded a school bus in front of a church located on
the Melrose-Wakefield line, and departed for a hayride at a farm
in Tewksbury. The defendant, an employee of the bus company
transporting the group, was the bus driver.

At the farm, the complainant, other youths, adult chaperones,
and the defendant boarded a horse-drawn wagon covered with
hay, which took them through some farmland and woods to a
bonfire in a clearing surrounded by trees and rocks. A path
through the woods led from the clearing to some portable toilet
facilities. It was dark outside, and the bonfire lit up only the im-
mediately surrounding area.

---

[1]The witness defined "dissociation" or "disassociation" as "a psychologi-
cal state" whereby persons "distance themselves from the actual experience
of what's going on [and] lose a lot of the specific detail of time or place,
sometimes what is actually happening to them." We shall refer to this state as
dissociative memory loss.

[2]The complainant was twenty years old at the time of trial in December,
1997.

After fifteen or twenty minutes beside the bonfire, the complainant set out to use the toilet facilities. As he approached the facilities, he heard a voice from further down the path call out, "Hey, kid. Come here." He walked in the direction of the voice, and a man, whom he later identified as the defendant, grabbed his left hand, pulled it behind his back, and shoved him to the ground. The complainant could not see who it was who raped him, but noticed that his assailant was "plump" and had dark hair. The complainant returned to the bonfire, and, on his arrival, did not remember the rape and thought he had simply gone to the bathroom.

About fifteen minutes later, the group returned to the wagon. During the ride back to the bus, the defendant started a "hay fight" in which everyone participated. As the complainant was throwing hay, the defendant grasped the complainant's penis, over his clothing, seven or eight times.

The group rode back in the bus to Melrose. The complainant's father picked him up and drove him home. The following day, the complainant told his mother that the defendant had touched his "private area" on the hayride. The complainant did not tell his mother, nor anyone else, about the rape because he had no memory of it. His parents decided against pressing charges on the indecent touchings.

Almost two and one-half years later, toward the end of his junior year of high school, the complainant began to recall "bits and pieces" of the rape. By the beginning of his senior year, he remembered the rape in full, and had no doubt that it was the defendant who raped him. After his first year of college, the complainant reported the incident to law enforcement personnel. A Tewksbury police officer met with the defendant, who acknowledged having driven a group of young teenagers to a hayride in Tewksbury and acknowledged going on the hayride, but denied having participated in the "hay fight" and denied having touched any of the youths on that trip.

The defendant did not testify at trial, nor did he call any witnesses to testify on his behalf. His defense was based on cross-examination of the Commonwealth's witnesses to contend that he did not rape or molest the complainant, and that the complainant's version of events and claims were not credible.

1. Before trial, the Commonwealth notified the defendant's trial counsel that it intended to call an expert witness "to discuss the [complainant's] memory of the alleged assault, how a child's memory works, and why some areas of the incident were readily apparent [and] disclosed immediately and others were 'blocked out' for several years." Counsel filed a motion to exclude the testimony. The motion specifically objected to the anticipated testimony of the witness on "blocked out" memory on the ground that the witness's opinion was "based upon extraneous facts not within the area of her professional competence as well as upon hearsay statements." The judge took no action on the matter before trial.

On the third day of trial, immediately before the Commonwealth called the witness,[3] the defendant's trial counsel promptly renewed his objection to her testimony. The judge directed the Commonwealth to first establish, in the presence of the jury, the witness's qualifications as an expert, and then permitted cross-examination in that limited area.[4]

The witness testified during the voir dire that she has had approximately eighteen years' experience as a psychotherapist. She is a licensed independent certified social worker[5] with a bachelor's degree in social services and a master's degree in

---

[3]The witness was the only expert called by the Commonwealth.

[4]The defendant's trial counsel asked to cross-examine the witness outside the jury's presence. Without explanation, the judge, over objection, denied this request. The judge should not have conducted the examination in front of the jury.

We also have stated that, with respect to qualifying a witness as an expert, "[a]lthough it is for the court to determine whether a witness is qualified to testify as an expert, there is no requirement that the court specifically make that finding in open court upon proffer of the offering party. Such an offer and finding by the [c]ourt might influence the jury in [their] evaluation of the expert and the better procedure is to avoid an acknowledgement of the witness['s] expertise by the [c]ourt." Commonwealth v. Richardson, 423 Mass. 180, 184 (1996), quoting United States v. Bartley, 855 F.2d 547, 552 (8th Cir. 1988).

[5]The witness explained that, to obtain her license, she was required to have "five years['] postgraduate experience, a certain number of hours of supervision around cases, and pass an exam." Pursuant to G. L. c. 112, § 130, a "[l]icensed certified social worker" and a "[l]icensed independent clinical social worker" may render services, including "psychotherapy of a nonmedical nature," involving "the application of social work theory and methods" in the treatment of mental and emotional disorders.

social work. She testified that she had been trained as a specialist in sexual abuse and had worked as an outpatient clinician in the adolescent department of the Greater Manchester Mental Health Center in Manchester, New Hampshire; had worked at North Shore Children's Hospital in Salem, Massachusetts, in a variety of capacities, including conducting interviews and evaluations of, and providing treatment to, sexually abused children, as well as supervising the hospital's "sexual information and trauma team"; had been the director of an outpatient clinic in Lowell that provided evaluations of and treatment to sexually abused children; and had previously testified as an expert witness in the Superior Court. Since 1989, the witness has been in private practice, continuing her "specialty in sexual abuse and trauma to children as well as treating adult survivors." Over the years, the witness had studied in "the area of memory [of sexual abuse]" with a variety of researchers, including Dr. Bessel van der Kolk at the Human Resource Institute, Dr. Judy Herman at Cambridge Hospital, and others, and has attended seminars and workshops in this field.[6] She also subscribes to a number of journals and magazines concerning sexual abuse of children. Based on the witness's voir dire testimony, the judge found her qualified "to express opinions in the field of child abuse."[7]

Thereafter, the witness, who had not met with the complainant, and had not reviewed the particulars of the case, testified that victims of various traumas, including sexual abuse, experience many of the same symptoms, such as dissociative memory loss,[8] derealization,[9] nightmares, and "poor sleep." She explained that dissociative memory loss may lead to the delayed disclosure of a traumatic event. She stated that children who have been abused typically do not disclose such abuse im-

---

[6]During cross-examination, the witness explained that the workshops she had attended ranged from one day to one week in duration, and involved "taking courses throughout the day on a variety of topics."

[7]The judge then adequately instructed the jury on their role in evaluating expert testimony. See *Commonwealth* v. *Richardson, supra* at 184-185; *Commonwealth* v. *Dockham,* 405 Mass. 618, 629 (1989).

[8]See note 1, *supra.* The witness explained that dissociative memory loss generally occurs at the time of the trauma.

[9]The witness stated that "derealization" occurs when one "depersonalize[s] the situation . . . push[es] it away from [oneself] as an experience that is not happening."

mediately, but rather disclose the abuse "months to years after the actual experience happened."

The witness also explained that the eventual disclosure of a memory may vary from the disclosure of a partially recovered memory to the disclosure of a complete recall of an experience. Alternatively, an individual may completely repress a memory and only learn of a traumatic event from someone else. The witness stated that various factors influence when events, subject to dissociative memory loss, are remembered or recovered, including how one stores memory of trauma, how threatened an individual is in making a disclosure,[10] the response to the individual as a result of that disclosure, an individual's psychological makeup, and the type of treatment used to retrieve the memory.

As to traumatic memory, the witness testified how individuals remember traumatic events. She stated that traumatic memory is "stored in different parts of the brain [compared to everyday memories] which we're able to understand now through what we call PET scans. It's also retrieved differently than our everyday memory is retrieved. So that different cues, such as a nightmare or a smell or something that we hear, may trigger a memory that would . . . remind us of something to do with that traumatic memory and so little bits of information begin to come out." A PET scan, she explained, is "a scan of the brain [whereby dye is injected] into various parts of the brain [and one] can actually see by the color [that comes] up how different memories are being stored in the brain, the different parts of our brain that we are actually storing memory in." She further explained that, "[w]hen one is experiencing trauma . . . we might feel [dissociation] more in a physical sense where we're literally taking ourselves out of ourselves. And the brain is working in such a way that it's separating the memory so that we're not experiencing it as happening to ourselves." The witness testified that there are "various theories" concerning trauma memory, and that the subject is "filled with a lot of controversy" and "not completely understood."

---

[10]The witness testified that, if a child is physically threatened, the child may experience dissociation "more severely," causing the child to repress the difficult memory "more severely than if the trauma is not seen as dangerous or violent."

A trial judge has wide discretion to qualify an expert witness and to decide whether the witness's testimony should be admitted. See *Commonwealth* v. *Mahoney*, 406 Mass. 843, 852 (1990); *Commonwealth* v. *Dockham*, 405 Mass. 618, 628 (1989). " 'The crucial issue,' in determining whether a witness is qualified to give an expert opinion, 'is whether the witness has sufficient "education, training, experience and familiarity" with the subject matter of the testimony.' " *Commonwealth* v. *Richardson*, 423 Mass. 180, 183 (1996), quoting *McLaughlin* v. *Selectmen of Amherst*, 422 Mass. 359, 361-362 (1996). See *Commonwealth* v. *Mahoney, supra* (judge should consider "whether the witness has sufficient skill, knowledge, and experience in the area of his training"). Testimony *"on matters within the witness's field of expertise* is admissible" when the testimony concerns matters beyond the common knowledge of the jurors and will aid the jurors in reaching a decision (emphasis supplied). *Commonwealth* v. *Dockham, supra* at 628, quoting *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982). See *Commonwealth* v. *Richardson, supra.* Consequently, a judge's discretion can be abused when an expert witness is permitted to testify to matters beyond an area of expertise or competence. See *Timmons* v. *Massachusetts Bay Transp. Auth.*, 412 Mass. 646, 649 (1992). The admission of expert testimony will be reversed only where it constitutes an abuse of discretion or other error of law. See *Adoption of Hugo*, 428 Mass. 219, 232 (1998), cert. denied sub nom. *Hugo P.* v. *George P.*, 526 U.S. 1034 (1999), and cases cited.

The defendant argues that the judge erred in permitting the witness to offer an expert opinion on dissociative memory loss and recovered memory because she was not qualified to do so.[11] To the extent that the witness testified that victims of trauma, in

[11]The subject of "recovered memory," particularly of childhood sexual abuse, is highly controversial. See, e.g., Griffith, Repressed Memories: The Effects of Expert Testimony on Mock Jurors' Decision Making, 16 Am. J. Forensic Psychol. 5, 7 (1998) (noting controversies surrounding issue of delayed recall of childhood abuse); Payne, Memory Illusions: Recalling, Recognizing, and Recollecting Events That Never Occurred, 35 J. Memory & Language 261, 261 (1996) ("In recent years there has been a dramatic increase in interest in false memories —remembering something that never occurred or misremembering the details of an actual event — due in large part to controversies arising from the recovery of lost or repressed memories");

particular, sexually abused children, experience dissociative memory loss that may lead to the delayed recovery and disclosure of a traumatic memory, we disagree. "[C]ourts have uniformly allowed expert testimony on the typical symptoms of sexually abused children because the information is beyond the common knowledge of jurors and of assistance in assessing a victim witness's testimony and credibility." *Commonwealth* v. *Richardson, supra* at 182-183, quoting *Commonwealth* v. *Hudson*, 417 Mass. 536, 540 (1994). See *Commonwealth* v. *Thayer*, 418 Mass. 130, 134 (1994); *Commonwealth* v. *Dockham, supra* at 629-630. One of these symptoms includes "the common phenomenon of delayed disclosure in cases of child sexual abuse." *Commonwealth* v. *Allen*, 40 Mass. App. Ct. 458, 468

Schacter, The Recovered Memories Debate: A Cognitive Neuroscience Perspective, Recovered Memories and False Memories 63, 63 (M.A. Conway ed. 1997) ("The recovered memories debate is the most passionately contested battle that has ever been waged about the nature of human memory"). One of the central issues debated on this subject is "how and why individuals come to forget and then remember childhood sexual abuse . . . . Some [researchers] have argued that qualitatively different processes are involved in memory for traumatic versus nontraumatic events and that clinical mechanisms (e.g., cognitive avoidance or dissociation) are necessary to explain nonremembering of childhood trauma, whereas others have argued that general mechanisms of memory and forgetting (e.g., poor encoding, decay, interference, state- and context-dependency) are sufficient." Lindsay, The Controversy Regarding Recovered Memories of Childhood Sexual Abuse, 12 J. Interpersonal Violence 631, 639 (1997). In addition, it should be noted that differences in the ways researchers and critics have used certain key terms have contributed to the debate: "[F]or some . . . 'recovered memories' are understood necessarily to entail the existence of a special 'massive repression' mechanism by which memories of childhood sexual abuse are more or less instantly suppressed from awareness. For [others], the term 'recovered memories' does not necessarily entail any such special repression mechanism, and some prefer the related notions of dissociation or motivated forgetting as explanatory concepts." *Id.* at 635. See Paris, A Critical Review of Recovered Memories in Psychotherapy: Part I — Trauma and Memory, 41 Can. J. Psychiatry 201, 202 (1996) (defining defense mechanisms that influence access to memories, including "*suppression* — a conscious or semiconscious decision to control and conceal unacceptable impulses, thoughts, feelings, or acts; *repression* — an unconscious mechanism that banishes unacceptable ideas, fantasies, affects, or impulses from consciousness; or *dissociation* — the splitting of clusters of mental contents from conscious awareness," and explaining significance of terms: "In suppression, memories are available, but the individual makes an effort not to think about them; in repression, memories are unavailable; while in dissociation, not only memories, but entire segments of the personality become inaccessible" [emphasis in original]).

(1996). A critical issue in this case was the credibility of the complainant's claim that he immediately forgot about the rape, but recovered the memory of it years later. Thus, the subject matter was appropriate for expert testimony. In view of the witness's extensive training, education, and experience in interviewing, evaluating, and treating sexually abused children, the judge acted within his discretion to qualify the witness as an expert in child abuse, and to admit her testimony concerning dissociation and recovered memory; what these conditions or symptoms are; and the fact that victims of trauma may experience them. The fact that the witness was a certified social worker, and not a medical doctor or psychologist, does not alter this conclusion. See *Commonwealth* v. *Thayer, supra*; *Moore* v. *Fleet Refrigeration & Air Conditioning Co.*, 28 Mass. App. Ct. 971, 972 (1990), and cases cited.

However, we agree with the defendant that the witness should not have been permitted to testify about *how* a trauma victim stores and retrieves, or dissociates, a traumatic memory because the witness's testimony on these issues involved pronouncements concerning the physical functioning of the brain, a scientific and medical matter on which the Commonwealth failed to establish that the witness was qualified to testify. The judge's qualification of the witness in the field of child abuse in no way extended to a qualification in the area of the neurological or medical functioning of the brain, and the witness's testimony in the latter area obviously went beyond discussing the typical symptoms of sexually abused children.[12] See *Timmons* v. *Massachusetts Bay Transp. Auth., supra* at 649-650 (noting fact that witness is qualified as an expert in one area does not qualify him to give expert opinion in other area). The witness was not a medical doctor or a psychiatrist, and her

[12]In its brief, the Commonwealth acknowledges the difference between these two areas: "The purpose of [the witness's] testimony was not to explain the science of how memory works, but to explain that memory failure can be one of the many characteristics or 'symptoms' found in persons who have experienced sexual trauma." As we previously explained, there was no error in permitting the witness to testify to the symptoms, including dissociative memory loss and recovered memory, of sexually abused children. The problem with the witness's testimony arose when she proceeded to testify about the neurological science of how traumatic memory works.

license to practice social work did not authorize her to provide professional services of a medical nature. See G. L. c. 112, § 130 (those authorized to perform social work may provide services such as "psychosocial evaluation, counseling, psychotherapy of a nonmedical nature, referral to community resources, and the development and provision of educational programs").

Further, the witness's "studies" with allegedly noted researchers in the area of memory,[18] and attendance at various seminars and workshops, did not serve as a sufficient basis on which to qualify her to testify to the science of how traumatic memory works. The witness did not even explain what aspects of memory she studied with the researchers or at the seminars and workshops she attended.[14] Thus, contrary to the Commonwealth's contention, this is not a situation involving testimony on a question of discrete knowledge. Cf. *Commonwealth* v. *Mahoney, supra* at 852-853 (chemist trained in chemical analysis and experienced in forensic chemistry could testify that substance was vomit although not specifically trained in the chemical analysis of residual stomach contents).

Although the defendant's trial counsel did not object during the witness's direct examination to those portions of the witness's testimony that we have concluded were improperly admitted, counsel had made it clear to the judge, both in a

---

[18]Dr. Bessel van der Kolk has been described as "one of the country's most renowned psychiatrists in [the field of memory]." *Shahzade* v. *Gregory*, 923 F. Supp. 286, 287 (D. Mass. 1996). Dr. Judy Herman has been described as one of the founders of the "recovered memory" movement. F. Crews, The Memory Wars: Freud's Legacy in Dispute 160 (1995). The research conducted and findings reported by both of these doctors, however, have been the subject of considerable criticism. See H.G. Pope, Jr., The Scientific Status of Research on Repressed Memories, 1 Modern Scientific Evidence: The Law and Science of Expert Testimony 115, 121 (Supp. 2000) (criticizing van der Kolk's studies of neurotransmitters involved in memory, and neuroendocrine and imaging studies of trauma victims); McConkey, Memory, Repression, and Abuse: Recovered Memory and Confident Reporting of the Personal Past, 16 Am. Psychiatric Press Rev. Psychiatry II-55, II-64 (1997) (criticizing Herman study on recovered memories of childhood sexual abuse).

[14]There is no record support for the Commonwealth's assertion that the witness "gained knowledge of the basic physiological aspects of dissociation from reading and studying the works of others — such as the memory experts she studied with."

pretrial motion, and in his statements to the judge immediately before the witness testified at trial, that he objected to the witness's testimony relative to "how a child's memory works and why some areas were readily apparent and disclosed immediately and others were 'blocked out' for several years" on the ground that she was not competent to testify on such matters. Counsel's claim of error concerning the admission of such testimony was preserved and the Commonwealth does not argue to the contrary.

The complainant's credibility was pivotal to the Commonwealth's case. The witness's improperly admitted testimony served to bolster the complainant's credibility by providing a medically scientific explanation for his purported memory loss and its later recovery; and the prosecutor, during his closing argument, stressed the importance of the witness's testimony to credit the complainant's assertion that he immediately forgot about the rape, but years later recovered a complete memory of it. Because the improper testimony went to the only seriously contested issue at the trial, we cannot say that the judge's error in admitting the improper testimony "did not influence the jury, or had but very slight effect." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983). See *Commonwealth* v. *Woods*, 36 Mass. App. Ct. 950, 951 (1994), *S.C.*, 419 Mass. 366 (1995). See also Griffith, Repressed Memories: The Effects of Expert Testimony on Mock Jurors' Decision Making, 16 Am. J. Forensic Psychol. 5, 8 (1998) (noting that, where there is "little or no corroborating evidence in child sexual abuse case, juries are often left to weigh the credibility of the victim and the accused based largely on the expert testimonies"). Thus, the admission of the improper testimony was prejudicial. Further, because both the rape and indecent assault and battery offenses hinged, in large part, on the complainant's credibility, the convictions cannot be separated and both must be reversed. See *Commonwealth* v. *Dranka*, 46 Mass. App. Ct. 38, 43 (1998).

2. We need not reach the defendant's additional argument that the judge erred in failing to conduct a preliminary hearing to determine the reliability of the Commonwealth's proffered expert opinion testimony on the subject of dissociative memory

loss and recovered memory pursuant to *Commonwealth* v. *Lanigan*, 419 Mass. 15, 25-27 (1994). Depending on the type of expert opinion testimony the Commonwealth attempts to proffer at retrial, this issue may arise again. Contrary to the Commonwealth's assertion, a review of literature on the subject of dissociative memory establishes that the debate concerning the reliability or validity of recovered memory does not solely revolve around the use of memory recovery techniques in therapy. See, e.g., Lindsay, The Controversy Regarding Recovered Memories of Childhood Sexual Abuse, 12 J. Interpersonal Violence 631, 642 (1997) (debate exists over scientific processes used to recollect childhood traumas); McKonkey, Memory, Repression, and Abuse: Recovered Memory and Confident Reporting of the Personal Past, 16 Am. Psychiatric Press. Rev. Psychiatry II-55, II-55, II-59, II-71 (1997) (discussing how "biological, cognitive, and social influences that shape memory are intertwined in the debate about recovered memory"); Schacter, The Recovered Memories Debate: A Cognitive Neuroscience Perspective, Recovered Memories and False Memories 63, 79, 88 (M.A. Conway ed. 1997) (stating "there is no direct evidence that specific techniques used in therapy are the sole or primary cause of . . . false recollections" and discussing other aspects that merit consideration). Consequently, it may be appropriate for the trial judge to conduct a *Lanigan* hearing before retrial if the Commonwealth seeks to introduce expert testimony on the neurological aspects of dissociative memory loss, for the purposes of showing the reliability of recovered memory. This is distinguished from memory problems associated with dissociative memory loss, and related mental disorders, where a *Lanigan* hearing would not be necessary, such as those referred to in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, or those disorders where qualified expert testimony has been accepted as reliable in the past in Massachusetts appellate cases.

3. The judgments are reversed, the verdicts are set aside, and the case is remanded for further proceedings.

*So ordered.*