NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-956

COMMONWEALTH

vs.

TYRONE HOLLEY-HENDREN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On April 27, 2022, the defendant, Tyrone John Holley-Hendren, was found guilty of armed assault with intent to rob and carrying a firearm without a license in connection with the murder of Raymond Holloway-Creighton (the victim) who was shot and killed by codefendant Tyler Sales (Sales) during the commission of an attempted robbery. The defendant now appeals, arguing that the trial judge erred or abused his discretion by: (1) denying his motion to dismiss based on insufficient evidence and denying both of his motions for a required finding of not guilty; (2) admitting Facebook messages purportedly authored by the defendant; (3) admitting the expert testimony of Officer Timothy Trull (Officer Trull); and (4) denying the defendant's motion to dismiss pursuant to Mass. R. Crim P. 36 (b), as amended, 422 Mass. 1503 (1996), asserting a violation of his

right to a speedy trial.  The defendant also argues he is entitled to a new trial on the charge of carrying a firearm without a license where the Commonwealth failed to present any evidence of his lack of licensure.  For the following reasons, we affirm the defendant's conviction for armed assault with an intent to rob but vacate and remand the defendant's firearm conviction for further proceedings consistent with this memorandum and order.

Background.  We summarize the following relevant facts, while reserving further facts for discussion below.

In the early morning of October 5, 2018, members of the Boston police department responded to the area of 911 Massachusetts Avenue in response to a ShotSpotter activation for a single gunshot fired at 3:30 A.M.[1]  When the police arrived, they found the victim lying unconscious in the middle of the street next to a motorized scooter.[2]  The victim suffered a single gunshot wound to the back and was pronounced dead shortly after he was transported to the Boston Medical Center.

---

[1] ShotSpotter is an acoustic gunshot detection system that uses GPS-enabled microphone sensors to geolocate detected gunfire.

[2] During the investigation it was later learned that the victim was a delivery driver for GrubHub and Door Dash, third-party food delivery services.

As a part of their investigation, police recovered surveillance footage of the surrounding area showing the defendant, Sales, and a second codefendant, Daniqua Douglas Adedontun (Adedontun), riding motorized scooters throughout the city from 1:57 A.M. to 4:46 A.M. on the morning of the shooting. Adedontun rode on the back of the defendant's scooter, while Sales rode alone.  The surveillance footage showed that the three perpetrators first encountered the victim near Magazine Street, appearing to make repairs to his scooter.  After fixing his scooter, the victim drove away.  The defendant, still with Adedontun on the back of the scooter, followed the victim down Chesterton Street and stopped his scooter directly to the right of the victim at the end of the street, where it intersects with Massachusetts Avenue.  Next, codefendant Sales approached and positioned his scooter behind the victim.  The video then depicted Sales raising his right arm, purportedly displaying a firearm, directly towards the victim, who responded by getting off his scooter.  Moments later, the victim got back on his scooter.  At this point, the defendant began to dismount his scooter on the side closest to the victim. The victim then immediately attempted to turn left onto Massachusetts Avenue at which point Sales fired at him, fatally striking him in the back.  The defendant, who had never fully dismounted, then turned his scooter right onto Massachusetts Avenue, driving in

3

the opposite direction of the victim, and Sales followed on his own scooter.  Although the shooting occurred at 3:30 A.M., additional surveillance evidence showed the three codefendants still riding their scooters together at 4:46 A.M. on Dorchester Avenue.

As a result of the investigation, police interviewed the defendant, who identified himself, Sales, and Adedontun in still photographs taken from the surveillance footage.[3]  The defendant told police that it was he and Adedontun that were riding together on one scooter while Sales was riding alone.  The defendant admitted that earlier in the evening he had exchanged Facebook messages with Sales regarding stealing scooters.  The police later obtained a search warrant to acquire these Facebook records.  As a result of the investigation, the defendant was arrested.

Discussion.  1.  Sufficiency of the evidence.  The defendant argues that the judge erred in denying his motion to dismiss and denying his motions for a required finding of not guilty because the Commonwealth failed to present sufficient evidence to both the grand jury and at trial that the defendant knew Sales was armed and shared Sales' intent to commit armed assault with intent to rob.  We disagree.

_____

[3] The defendant said he only knew Sales as "Tyler," but police were able to identify Sales through a Facebook account.

4

"To sustain an indictment, the grand jury must be presented with sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him for the crimes charged" (quotation and citation omitted).  Commonwealth v. Rakes, 478 Mass. 22, 29 (2017).  "'This standard . . . has been employed primarily to strike down indictments in cases where a grand jury has heard . . . no evidence whatever that would support an inference of the defendant's' guilt."  Id., quoting Commonwealth v. Truong Vo Tam, 49 Mass. App. Ct. 31, 37 (2000).  We review the sufficiency of the evidence supporting an indictment in the light most favorable to the Commonwealth.  Id.

Likewise, when reviewing claims of insufficient evidence presented at trial, "we assess the evidence in the light most favorable to the Commonwealth 'to determine whether any rational trier of fact could have found each element of the crime beyond a reasonable doubt.'"  Commonwealth v. Baez, 494 Mass. 396, 400 (2024), quoting Commonwealth v. Robinson, 493 Mass. 303, 307 (2024).  "The evidence may be direct or circumstantial, and we draw all reasonable inferences in favor of the Commonwealth" (citation omitted).  Id.

To prove armed assault with intent to rob in a joint venture, the Commonwealth is required to prove beyond a reasonable doubt "that the defendant or a coventurer, or both,

5

while armed with a dangerous weapon, 'assault[ed] a person with a specific or actual intent to rob the person assaulted.'" Commonwealth v. Chesko, 486 Mass. 314, 320 (2020), quoting Commonwealth v. Benitez, 464 Mass. 686, 694 n.12 (2013). Because the offense of armed assault with intent to rob "require[s] that the Commonwealth establish that the perpetrator was armed, knowledge of a weapon is an element of the Commonwealth's proof when a defendant is prosecuted on a theory of joint venture" (quotation and citation omitted). Commonwealth v. Garcia, 470 Mass. 24, 31 (2014). A joint venturer's knowledge of a weapon may be inferred where "a robbery is committed in a public place under circumstances where it can be anticipated that a means must be found to persuade the victim to surrender his property quickly and without resistance." Commonwealth v. Colon, 52 Mass. App. Ct. 725, 728 (2001). Likewise, "[a] jury can infer that a defendant knew his or her coventurer to be armed in cases where the victims' resistance can reasonably be anticipated, as the defendant is presumed to recognize the need for a means by which to overcome that resistance." Rakes, 478 Mass. at 33.

a. Evidence before the grand jury. The evidence presented to the grand jury was sufficient to establish the identity of the defendant and probable cause to arrest him for the crime charged. The evidence before the grand jury included the

testimony from Detective Phillip Bliss (Detective Bliss) that the defendant originally became a suspect when he was identified from the surveillance footage by three separate police officers. Detective Bliss also summarized two recorded interviews during which the defendant, after viewing the still photos from the surveillance videos, identified himself as the person on the scooter. The grand jury was also presented with the video evidence of the defendant's fatal encounter with the victim, as well as Facebook messages corroborated by video evidence from that evening indicating that the defendant was planning on stealing scooters. The Commonwealth also presented the grand jury with the defendant's two recorded interviews. Accordingly, the judge did not err in denying the defendant's motion to dismiss the indictment. See Rakes, 478 Mass. at 29.

b. Evidence at trial. Viewed in the light most favorable to the Commonwealth, the evidence adduced at trial was sufficient to show that the defendant possessed the requisite intent and knowledge to be convicted of armed assault with intent to rob as a joint venturer. See Baez, 494 Mass. at 400. First, as to the defendant's intent, the Commonwealth introduced Facebook messages by the defendant expressing interest in stealing scooters less than three hours before he and his codefendants encountered the victim. The defendant, using the

account "Trappytoo Savage,"[4] exchanged messages with the account "Stupi Ty" and discussed the prospect of stealing various scooters that Stupi Ty had purportedly identified on the street just hours before the shooting. This conversation ended mere minutes before the defendant met up with his codefendants.

Additionally, the surveillance footage showed that after the defendant had been riding the streets of Boston for less than two hours, he and his codefendants passed by the victim as he was fixing his scooter before following him down Chesterton Street, where the defendant pulled up beside the victim and began to dismount his scooter on the side closest to the victim before Sales fired his weapon. The defendant's expressed desire to steal scooters, taken together with his actions leading up to and during the shooting, reasonably demonstrate the requisite intent to rob the victim.

Furthermore, the defendant's knowledge that Sales possessed a firearm can be inferred from the totality of the circumstances. First, the nature of the planned robbery made it highly likely that a weapon would be involved. The victim was a food delivery driver operating in a desolate, commercial area around 3:30 A.M. It is reasonable to expect that someone working alone late at night in such an environment would be

---

[4] The defendant's arguments challenging the admission of these messages are addressed below.

8

accustomed to managing risky situations on their own, making them more likely to take precautions such as carrying a weapon and staying vigilant, and less likely to simply comply with an attempted robbery. Second, unlike a robbery of a store clerk or pedestrian, a delivery driver on a moped has an immediate means of escape, making it foreseeable that force or the threat of force would be necessary to complete the crime. Third, the coordinated manner in which the perpetrators approached the victim supports a reasonable inference that they shared a common understanding of the means and methods necessary to commit the crime. While following the victim, the defendant and Adedontun rode in front of Sales, while occasionally pausing to ensure that Sales, who possessed the firearm, was not far behind. When the victim stopped at the end of Chesterton Street, the defendant pulled up next to the victim on his right side, allowing Sales to position his scooter behind the victim. This positioning allowed Sales to engage the victim with the firearm while leaving the defendant and Adedontun in a position to take the victim's scooter. Contrast Baez, 494 Mass. at 403-406 (finding knowledge of firearm could not be inferred where there was no evidence defendant getaway driver saw or participated in commission of shooting or shared assailants' intent).

9

Accordingly, the judge did not err in denying the defendant's motions for a required finding at trial with respect to his charge for armed assault with intent to rob.[5]

2. The Facebook messages. The defendant further argues that the trial judge erred in admitting the Facebook messages between Trappytoo Savage and Stupi Ty for the following reasons: (1) the messages constitute hearsay and were unduly prejudicial; (2) the Commonwealth failed to properly authenticate the messages; and (3) no confirming circumstances indicated that Sales or the defendant authored the messages. These arguments are unavailing.

a. Hearsay. Rather than introduce the Facebook messages for their truth, the Commonwealth introduced the messages for a nonhearsay purpose, which was to offer evidence of the defendant's state of mind and motive during the early morning of October 5, 2018. Commonwealth v. Koney, 421 Mass. 295, 303 (1995). For example, while the messages discuss the location of various scooters that Stupi Ty and Trappytoo Savage had

_____

[5] The defendant also suggests that the jury's verdict was an improper compromise where the jury convicted the defendant of armed assault with intent to rob but acquitted him of first-degree felony murder. However, "speculation on reasons for the jury's verdict . . . is fruitless. . . . [and a] finding of not guilty can result from factors having nothing to do with actual guilt." Commonwealth v. Elliffe, 47 Mass. App. Ct. 580, 585 (1999). Accordingly, this argument does not entitle the defendant to relief.

10

identified to possibly steal, the Commonwealth did not introduce the messages to prove that scooters were actually parked in the locations referenced. Instead, the Commonwealth used the messages to show the defendant's intent to steal scooters and offer evidence of his motivation to rob the victim of his scooter. Additionally, the probative value of these messages was not substantially outweighed by the danger of unfair prejudice, especially where the messages referenced chained scooters and did not indicate that the defendant planned to commit a violent crime. See Commonwealth v. McLeod, 39 Mass. App. Ct. 461, 463-464 (1995). See also Mass. G. Evid. § 403 (2024).

b. Authentication and confirming circumstances. The defendant further asserts that the trial judge improperly admitted the Facebook messages where the Commonwealth presented no evidence that the "Stupi Ty" account belonged to codefendant Sales and no evidence that either the defendant or Sales authored any of the messages.

"In the case of a digital communication that is relevant only if authored by the defendant, a judge is required to determine whether there is sufficient evidence to persuade a reasonable trier of fact that it is more likely than not that the defendant was the author of the communication." Commonwealth v. Meola, 95 Mass. App. Ct. 303, 308 (2019). "[A]

11

judge making this threshold determination may consider circumstantial evidence and look to 'confirming circumstances.'" Id. at 311, quoting Commonwealth v. Purdy, 459 Mass. 442, 450 (2011). "We review a judge's preliminary determination of conditional relevancy under Mass. G. Evid. § 104(b) under an abuse of discretion standard." Id. at 309. "That standard means that we will not disturb the judge's ruling absent a clear error of either law or judgment in weighing the relevant factors" (quotation and citation omitted). Id.

Here, the judge did not abuse his discretion in making a preliminary determination that a jury could find by a preponderance of the evidence that the defendant authored the Facebook messages sent by Trappytoo Savage. See Meola, 95 Mass. App. Ct. at 308. Specifically, the jury heard testimony from Destinei Williams (Williams), the defendant's previous girlfriend with whom he shares a child, that she communicated with the defendant through Facebook on October 4, 5, and 6 of 2018, by messaging his account under the name "Trappytoo Savage." Williams testified that she knew it was the defendant due to the personal nature of their conversations. Furthermore, around 1:50 A.M. on the day of the shooting, Trappytoo Savage messaged Stupi Ty that he was "[c]oming down Morton," and surveillance footage shows the defendant on his scooter in the area of Morton Street approximately eight minutes later. Given

12

these confirming circumstances, there was ample evidence to support the judge's determination to admit the messages. See Meola, 95 Mass. App. Ct. at 311.

Additionally, the defendant asserts that the judge improperly allowed the Commonwealth's motion for reconsideration regarding the admission of the Facebook messages because the Commonwealth's motion failed to show, pursuant to Mass. R. Crim. P. 13 (a) (5), as appearing in 442 Mass. 1516 (2004), that "substantial justice" required its allowance. This argument is without merit. The judge did not abuse his discretion in allowing the Commonwealth's motion for reconsideration regarding the admission of the Facebook messages where the messages were probative of the defendant's state of mind and there was sufficient evidence that the defendant authored the messages.[6] See Audubon Hill S. Condominium Ass'n v. Community Ass'n Underwriters of Am., Inc., 82 Mass. App. Ct. 461, 470 (2012) ("a motion for reconsideration calls upon the discretion of the motion judge"); see also Commonwealth v. Lugo, 64 Mass. App. Ct. 12, 14 (2005) (finding rule 13 does not disturb judge's common

_____

[6] The Commonwealth did not attempt to show, and the judge was not required to determine that Sales was the author of the messages from the Stupi Ty account because the Commonwealth introduced the messages to show that the defendant was engaged in a joint venture with another person to steal scooters on the night of the shooting. In this regard, the identity of the defendant's coventurer was irrelevant.

13

law authority to "reconsider his own decisions during the pendency of a case").

3. Officer Trull's testimony. The defendant also argues that the trial judge abused his discretion in qualifying Officer Trull as an expert on "bike life" and admitting his expert testimony because it failed to meet the foundational requirements for expert testimony in a criminal case. See Commonwealth v. Barbosa, 457 Mass. 773, 783 (2010). This argument is also unavailing.

Before expert testimony can be admitted in a criminal case the Commonwealth must establish the following five foundational requirements: "(1) that the expert testimony will assist the trier of fact; (2) that the witness is qualified as an expert in the relevant area of inquiry; (3) that the expert's opinion is based on facts or data of a type reasonably relied on by experts to form opinions in the relevant field; (4) that the process or theory underlying the opinion is reliable; and (5) that the process or theory is applied to the particular facts of the case in a reliable manner" (citations omitted). Barbosa, 457 Mass. at 783. The test for reliability is a flexible one, and the trial judge's "gatekeeping inquiry must be tied to the facts of a particular case" (quotations and citation omitted). Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). "The admission of expert testimony will be reversed

14

only where it constitutes an abuse of discretion or other error of law." Commonwealth v. Frangipane, 433 Mass. 527, 533 (2001).

Here, Officer Trull's expert testimony on "bike life," a term describing, inter alia, the illegal operation and theft of scooters, motorcycles, and off-highway vehicles (OHVs), was based upon his experience assigned to the auto theft unit of the Boston police department since 2014 where he has specifically focused on bike life matters.[7] To investigate suspects involved in this subculture, Officer Trull testified that he monitors suspected thieves on social media, tracks stolen vehicles and vehicle parts through online postings, and has used "bait scooters" to target thieves. He has also analyzed numerous scooter thefts that have been caught on surveillance videos and estimated that he has stopped approximately five hundred individuals on scooters in the five years prior to his testimony. Furthermore, Officer Trull assisted in drafting a city ordinance, enacted in 2016, that allows law enforcement to

---

[7] "Bike life" is a cultural phenomenon that arose in Baltimore in 2010. The phenomenon is characterized by large groups of people riding scooters, dirt bikes, motorcycles, and OHVs through the city streets, often weaving in and out of traffic and disobeying traffic laws. Bike life grew as participants gained acclaim by posting their rides on social media, and the movement spread throughout the northeast and into Boston. As bike life gained popularity, so did scooter, dirt bike, and OHV thefts, and a significant street market arose where these vehicles and their parts are sold.

15

impound motorized recreational vehicles, such as scooters, dirt bikes, and OHVs that are operated in public areas in a hazardous manner, resulting in a reduced number of interactions between law enforcement and riders.  By engaging in these investigative methods and legislative efforts, Officer Trull has become familiar with the street value of stolen scooters, as well as the methods employed by thieves to steal scooters and sell them. For example, Officer Trull testified that these methods include double riding, where two people ride on one scooter so the passenger can drive away with the stolen scooter.

Given Officer Trull's extensive training and experience, as well as his familiarity with the patterns and methods of suspected scooter thieves, Officer Trull was qualified to testify as an expert on bike life.  See Frangipane, 433 Mass. at 533.  Additionally, Officer Trull's testimony was helpful to the trier of fact in evaluating the actions and motivations of the defendant on October 5, 2018.  See Barbosa, 457 Mass. at 783. See also Commonwealth v. Miranda, 441 Mass. 783, 793 (2004). Notably, the defendant was double riding when the group approached the victim.  Officer Trull's testimony also assisted the jury in understanding the resell value of the victim's scooter.  Additionally, Officer Trull's testimony regarding his investigative methods described a sufficiently reliable process that is responsive to facts and data that he has gained as a

16

police officer.  See Barbosa, supra at 783.  Importantly, the trial judge limited Officer Trull's testimony to his "general experiences" and methodology as a police officer, and he did not testify to his opinion of the facts of the case.  Accordingly, the trial judge did not abuse his discretion in admitting Officer Trull's expert testimony.  See Frangipane, 433 Mass. at 533.

4.  Speedy trial.  The defendant also urges that the trial judge erred in denying his motion to dismiss pursuant to Mass. R. Crim. P. 36 (b) in violation of his right to a speedy trial. Rule 36 (b) (1) (C) states that "a defendant shall be tried within twelve months after the return day in the court in which the case is awaiting trial."  Here, because the defendant's case was awaiting trial in the Superior Court when the defendant moved to dismiss, the "return date" under rule 36 must be calculated from February 15, 2019, the day the defendant was arraigned in Superior Court.  See Commonwealth v. Polanco, 92 Mass. App. Ct. 764, 767 (2018).  Significantly, while the period between the defendant's arraignment and the start of his trial exceeded the twelve months permitted by rule 36 by a total of 789 days, these days are all excludable from rule 36

17

calculations.[8]  For example, the Supreme Judicial Court's COVID-19 Standing Orders deemed the time from March 13, 2020, to March 14, 2022, excludable from rule 36 calculations.  See Commonwealth v. Lougee, 485 Mass. 70, 77-80 (2020).  This time accounts for 731 days.  Furthermore, the defendant concedes that there are at least eighty-nine days of excluded time between March 19, 2019, and February 13, 2020.  Accordingly, the speedy trial clock ran for less than twelve months, and the defendant's rights under rule 36 were not violated.[9]

5.  Firearm conviction pursuant to G. L. c. 269, § 10 (a). The defendant argues, and the Commonwealth concedes, that he is entitled to a new trial for his conviction of carrying of a firearm without a license because the Commonwealth failed to present any evidence of his lack of licensure in accordance with the Supreme Judicial Court's decisions in Commonwealth v. Guardado, 491 Mass. 666 (2023), and Commonwealth v. Guardado,

_____

[8] A period of 1,154 days elapsed from the date of the defendant's arraignment on February 15, 2019, to the start of the defendant's trial on April 13, 2022.

[9] In the heading of his brief, the defendant states that he was also deprived of a speedy trial under the Federal and State constitutions.  However, his subsequent argument and analysis solely focus on his speedy trial claim under rule 36. Therefore, because he fails to present an adequate argument with respect to his constitutional speedy trial claim, we need not address it on appeal.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019). See also Lyons v. Secretary of the Commonwealth, 490 Mass. 560, 593 n.42 (2022).

18

493 Mass. 1 (2023) (Guardado II).  Indeed, because the defendant was tried prior to June 23, 2022, and the Commonwealth failed to present evidence of his lack of a license, we agree that the defendant is entitled to a new trial for his firearm conviction. See Guardado II, supra at 12.

6.  Conclusion.  For the reasons discussed above, we affirm the judgment of conviction on the indictment charging the defendant with armed assault with intent to rob.  The judgment of conviction on the indictment charging the defendant with unlawfully carrying a firearm in violation of G. L. c. 269, § 10 (a), is vacated, the verdict is set aside, and the case is remanded to the Superior Court for further proceedings consistent with this decision.

So ordered.

By the Court (Desmond, Walsh & Toone, JJ.[10]),

Clerk

Entered:  February 7, 2025.

---

[10] The panelists are listed in order of seniority.